United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABANTE ROOTER AND PLUMBING INC, <br><br> Plaintiff, <br><br> v. <br><br> NATIONWIDE MUTUAL INSURANCE COMPANY, <br><br> Defendant. | Case No. 17-cv-03328-EMC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO STAY OR DISMISS** <br><br> Docket No. 33 |

Plaintiff Abante Rooter and Plumbing Inc. alleges Defendant Nationwide Mutual Insurance Company violated the Telephone Consumer Protection Act ("TCPA") by using an "automatic telephone dialing system" (ATDS) to call Plaintiff and other putative class members without their consent and to solicit their purchase of Defendant's services.

Defendant moves to stay the case pending the D.C. Circuit's resolution of an issue as to what types of devices qualify as an ATDS under the statute or, alternatively, to dismiss Plaintiffs' claims as inadequately pled. For the reasons below, Defendant's motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Abante is a rooting and plumbing business. First Amended Complaint ("FAC"), Docket No. 18 ¶ 4. Nationwide is an insurance company. *Id.* ¶ 5. Abante alleges that Nationwide called its cellphone numbers to promote Nationwide's services between August 2016 and March 2017. *Id.* ¶ 8. Abante alleges it heard an "audible clicking noise" when it answered the calls and before a Nationwide representative began speaking. *Id.* ¶ 9. According to Abante, such an audible clicking noise is "indicative of the switching device used as part of a predictive dialer or other automatic dialing system." *Id.* Abante alleges that it did not give prior consent to receive the calls, and the

calls therefore violated the TCPA. *See* 47 U.S.C. § 227(b)(1)(A); *id.* ¶¶ 12, 14. Abante requested Nationwide place its cellular telephone numbers on a Do-Not-Call list, but Nationwide continued to make solicitation calls after that request. *Id.* ¶ 15.

At the last case management conference, the Court directed the parties to conduct limited discovery on whether an auto dialer or manual click was used. *See* Docket No. 36. Nationwide's supplemental brief includes a declaration from its vendor, Exclusive Calls, stating that a Fenero phone system was used to call Plaintiff. Docket No. 39. According to the declaration, "an Exclusive Calls representative had to physically click a button on his/her computer screen to launch each call, which required human intervention. The representative who launched the call is the same person on the phone when the called party answers the call." Amin Decl. ¶ 3. "Exclusive Calls did not place any calls to the phone numbers… using artificial or prerecorded voice." *Id.* ¶ 5.

Plaintiff reports that, other than Defendant's declaration, no other discovery on the question has taken place and more is needed to understand the degree of human intervention that occurred as well as the configuration of the particular phone system used to call Plaintiff.

## II. <u>LEGAL CONTEXT</u>

The TCPA prohibits use of an automatic telephone dialing system (ATDS) to place calls to wireless subscribers without their prior express consent. An ATDS is "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The Federal Communications Commission ("FCC") has determined that the basic functions of an ATDS are the capacity to "dial numbers without human intervention" and to "dial thousands of numbers in a short period of time." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 F.C.C. Rcd. 14014, 14092 (2003), ¶¶ 132-33. An ATDS "need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster*, 569 F.2d 946, 951 (9th Cir. 2009).

On July 10, 2015, the FCC rejected a request to limit its interpretation of "capacity" under the TCPA to equipment which has the "present ability" to dial telephone numbers randomly or

2

sequentially. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7974 (2015) (hereinafter, "2015 FCC Order"). Rather, it determined that equipment has such "capacity" if it has the future potential to do so even if it is not "presently" used in that manner. *Id.* This interpretation is at the heart of a consolidated appeal before the D.C. Circuit in *ACA International et al., v. Federal Communications Commission and USA*, No, 15-1211 (D.C. Cir. 2016) ("*ACA Int'l*"). In part, the D.C. Circuit is considering the validity of the FCC's interpretation of the term "capacity" with respect to future potential. *ACA International et al., v. Federal Communications Commission and USA*, Joint Brief for Petitioners, No, 15-1211 (D.C. Cir. 2016). The D.C. Circuit heard oral argument on October 19, 2016 but has yet to issue a decision.[1]

The 2015 FCC Order also re-affirms its long-standing position in prior orders that a "predictive dialer" constitutes an ATDS. *Id.* at 7972. Additionally, the FCC affirmed that what constitutes human intervention requires a "case-by-case determination," 2015 FCC Order at 7975, rejecting a request that the Commission "adopt a 'human intervention' test by clarifying that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention." *Id.* at 7976. These two aspects of the 2015 FCC Order are not at issue in *ACA Int'l*, and thus are not affected by the pending appeal.

## III. DISCUSSION

A. Defendant's Motion for a Stay

Nationwide argues that the case should be stayed because the outcome of *ACA Int'l* will affect the scope of the dispute. The Court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). Under *Landis*, the Court must weigh: (1) "the possible damage which may result

---

[1] The D.C. Circuit's decision will be binding on this Court because the appellate courts have exclusive jurisdiction to determine the validity of all FCC final orders and the Judicial Panel on Multidistrict Litigation has consolidated the various appeals in the D.C. Circuit. *See* 28 U.S.C. §2342(1); *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1987); *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1057 (9th Cir. 2008); *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2017 WL 167678, n. 1 (N.D. Cal. Jan. 17, 2017).

3

from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962). Indeed, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id.*

The *Landis* factors weigh against a stay here. Even if the D.C. Circuit reverses the 2015 FCC Order, the claims in dispute will not be narrowed significantly as Plaintiff does not rely exclusively on a "future potential" theory of liability but also a "present ability" theory. Regardless of the outcome of *ACA Int'l*, a factual record will need to be developed on issues such as whether Abante gave advanced consent, the degree of human intervention involved in calling Abante, the configuration of the phone system used and the extent of its "present abilities," and was there telltale click and what did it mean. There is no indication that ascertaining these facts will be costly or entail significant resources. Nationwide's own declaration indicates that it has already identified who called Abante and how that call was made, demonstrating that discovery on those issues will not be complex or burdensome.[2] Nationwide has not demonstrated undue prejudice in the absence of a stay.

The orderly course of justice will be enhanced because development of the record on key facts may expedite and facilitate the application of law, including that pronounced by the Circuit

---

[2] Defendant argues that its declaration demonstrates that there was "human intervention," precluding liability. If the Court were to ultimately determine that the degree of human intervention precluded liability, then Plaintiffs' claims would turn on *ACA Int'l*. But Defendant has fallen far short of demonstrating that that is the case on this motion. First, this is a motion to dismiss not a motion for summary judgment, so the declaration is not properly before the Court. Second, the declaration does not explain what it means to "launch" a call and provides insufficient detail to determine whether the human intervention alleged is sufficient to conclude the phone system is not an ATDS, a highly fact-specific inquiry. *See*, *e.g.*, 30 FCC Rcd. at 7975 ("How the human intervention element applies to a particular piece of equipment is specific to each individual piece of equipment, based on how the equipment functions and depends on human intervention, and is therefore a case-by-case determination."); *Brickman v. Facebook, Inc.*, 230 F.Supp.3d 1036, 1042 (N.D. Cal. 2017) (the court must determine "to what extent human intervention is the impetus for the transmission" because "a person will always be a but-for cause of any action's machine"). Moreover, Plaintiff has not had an opportunity to test the declaration through discovery or deposition. The parties and the Court will be better served by a more developed factual record before reaching this question.

4

Court in *ACA Int'l*.

In contrast, Abante and other class members could be prejudiced by a stay because witness memories may fade, turnover of employees at Nationwide may result in diminished access to material witnesses, and it may become more difficult to locate and notify putative class members as time lapses. This is exacerbated by the unknown duration of a stay as the D.C. Circuit's decision has long been pending and is likely to be followed by appeals to the Supreme Court.[3]

In sum, a stay is not warranted. *ACA Int'l* will not significantly narrow the disputed issues,[4] will not simplify the proceedings,[5] and focused discovery will prepare a factual record so that the legal issues can be resolved after *ACA Int'l* is decided.

Accordingly, Defendant's request for a stay is **DENIED**.

As stated at the hearing, discovery at this time will be limited to non-burdensome document discovery on individual issues such as the account notes for Plaintiff, including call logs; the manual for the dialer used to call Plaintiff; the method by which the dialing system determines what phone numbers to dial; a more robust declaration from the third-party who placed the calls to Plaintiff concerning the configuration of the system and the role of human intervention; and up to two depositions.

B.  Motion to Dismiss

Nationwide moves in the alternative to dismiss Abante's claims arguing that Plaintiff has

---

[3] *See, e.g., Pedro-Salcedo v. Haagen-Dazs Shoppe Co., Inc.*, No. 5:17-CV-03504-EJD, 2017 WL 4536422, at *3 (N.D. Cal. Oct. 11, 2017); *See Glick v. Performant Fin. Corp.*, No. 16-CV-5461-JST, 2017 WL 786293, at *2 (N.D. Cal. Feb. 27, 2017) ("it is far from guaranteed that a final result in *ACA International* is imminently forthcoming"); *Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-CV-1109-JST, 2017 WL 167678, at *3 (N.D. Cal. Jan. 17, 2017) (finding that appeal in *ACA International* is likely, and "[s]uch an extended stay would prejudice the Plaintiff because the passage of time will make it more difficult to reach class members and will increase the likelihood that relevant evidence will dissipate").

[4] *See Glick*, 2017 WL 786293, at *2; *see also Cabiness*, 2017 WL 167678, at *3; *Lathrop*, 2016 WL 97511, at *4; *Edwards v. Oportun, Inc.*, 193 F.Supp.3d 1096, 1102 (N.D. Cal. 2016).

[5] *See Edwards*, 193 F.Supp.3d at 1102 (finding that judicial economy is not served because factual disputes remain); *see also DeClue v. United Consumer Fin. Servs. Co.*, No. 16CV2833 JM (JMA), 2017 WL 4541668, at *2 (S.D. Cal. Oct. 11, 2017) (same); *Mendez*, 239 F. Supp. 3d at 1234 (finding that the D.C. Circuit's decision would not substantially simplify the issues presented because defendant must still produce discovery to settle factual disputes regarding its autodialing technology).

not adequately pled the use of an ATDS. Abante claims it received at least two calls (including after requesting to be placed on a do not call list), that it had no prior relationship with Nationwide, that it heard a clicking noise and pause at the beginning of the calls, and that the representative attempted to sell Nationwide's products to it. *See* FAC ¶¶ 8-15. These allegations are sufficient to support a plausible inference that an ATDS was used to call Plaintiff. *See*, *e.g.*, *Lofton v. Verizon Wireless (VAW) LLC*, No. 13-CV-05665-YGR, 2015 WL 1254681, at *5 (N.D. Cal. Mar. 18, 2015) (holding that descriptions of the "'telltale' pause after plaintiff picked up each call" support inference a predictive dialing system was used); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1027-30 (N.D. Cal. 2017) (holding that "where the content of the messages is impersonal advertisement, the content supports an inference that a defendant used an ATDS," and that allegations of more than one call also bolster inference).[6] Accordingly, Nationwide's motion to dismiss is **DENIED**.

This order disposes of Docket No. 33.

**IT IS SO ORDERED.**

Dated: January 26, 2018

EDWARD M. CHEN
United States District Judge

---

[6] *See also Lemieux v. Lender Processing Ctr.*, No. 16-CV-1850-BAS(DHB), 2017 WL 1166430, at *5 (S.D. Cal. Mar. 29, 2017) ("the allegation that Plaintiff heard a 'pause and/or clicking noise before a representative of Defendants came on the line' is a sufficient description in laymen's terms to establish Plaintiff's belief that the call was delivered via an ATDS"); *Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F.Supp.3d 937 (C.D. Cal. 2015) (allegations that defendant used an ATDS and that he heard a "pause" after answering the telephone was sufficient); *Loveless v. A1 Solar Power, Inc.*, No. EDCV141779FMODTBX, 2015 WL 4498787, at *1 (C.D. Cal. July 23, 2015) (allegations that defendant contacted telephone number more than once for solicitation purposes and that plaintiff was greeted by "dead air" before defendant's representative spoke sufficient); *Kazemi v. Payless Shoesource, Inc.*, No. 09-cv-5142-MHP, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010) (allegations sufficient where content of the messages was advertisement scripted "in an impersonal manner"); *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165, 1171 (N.D. Cal. 2010) (same).